IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LISA A. HEMPHILL, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | C.A. No. 10-679 (PSD/TR) |
| : | |
| CITY OF WILMINGTON, : | |
| THE MAYOR and COUNCIL OF : | |
| THE CITY OF WILMINGTON, : | |
| : | |
| Defendants. | |

## PLAINTIFF'S POST TRIAL MOTION FOR EQUITABLE RELIEF

This is the plaintiff's post trial application for equitable relief. The trial in this matter concluded with a jury verdict in favor of the plaintiff, finding "…by a preponderance of the evidence, that the City of Wilmington unlawfully retaliated against Lisa Hemphill by forcing her to transfer from her supervisory position back to her position as administrative assistant to the Chief of Police in January, 2008...".(*Jury Verdict Sheet*; Dk-73). Such a finding of retaliation constitutes an unlawful employment practice, 42 U.S.C. §2000e-3.

The provisions of Title VII, 42 U.S.C. § 2000e-5(g) provide where there is a finding of an unlawful employment practice, as in this case, of retaliation:

> "…the court may enjoin the respondent from engaging in such an unlawful employment practice, and may order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement…with or without reinstatement…with or without back pay… or any other equitable relief as the Court may deem appropriate."

"The language of § 706(g), 42 U.S.C. § 2000e-5(g) plainly expresses Congress's intent to vest District Courts with broad discretion to award 'appropriate' equitable relief to remedy unlawful discrimination." Local 28 of Sheet Metal Workers International Ass'n. v. E.E.O.C., 478 U.S. 421, 446 (1986).

The most critical inquiry in determining the appropriate equitable relief is to find the position that plaintiff would have been in had she not suffered the unlawful employment action of the defendant. Kunday v. Muhlenberg College, 463 F.Supp. 294, 312 (E.D.Pa. 1978), citing Franks v. Bowman Transportation Co., 424 U.S. 747, 764.(1976). "A chief remedial purpose of employment discrimination statutes such as (Title VII) is 'to make persons whole for injuries suffered on account of unlawful employment discrimination'." Eshelman v. Agere Systems, Inc., 554 F.3d 426, 440 (3rd Cir. 2009), citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362 (1975) The Court's equitable power allows for placing the plaintiff in the same level of employment she would have been in if there had not been the unlawful employment practice, here of retaliation, as found by the jury. Heller v. Elizabeth Forward School Dist., 182 Fed.Appx. 91, 96 (3rd Cir. 2006). "Congress armed the courts with broad equitable powers to effectuate this make whole' remedy." Eshelman, at 440.

**A. "Instatement" to a "Classified or Merit" Position:** The Third Circuit has echoed the Supreme Court's rule requiring equitable relief be granted a prevailing Title VII plaintiff. In Gunby v. Pennsylvania Electric Co., 840 F.2d 1108, 1124 (3d Cir. 1988), the Court of Appeals reversed the District Court's holding that had denied equitable relief after a jury finding of discrimination. The

2

Case 1:10-cv-00679-TR Document 79 Filed 11/02/11 Page 3 of 15 PageID #: 842

Court ruled that the denial of retroactive relief restoring the plaintiff to a position they would have held but for the wrongful conduct was:

> "…permissible only for reasons that 'would not frustrate the central statutory purpose of eradicating the discrimination throughout the economy and making persons whole for injuries suffered through past discrimination'." Gunby, 840 F.2d 1124, citing Franks v. Bowman Transportation Co., 424 U.S. 747, 771 (1976), itself citing Albermarle Paper Co. v. Moody, 442 U.S. 405, 421 (1975).

In Gunby, the Court of Appeals reversed the District Court's denial of equitable relief and remanded for "… development of the record and an order *granting full equitable relief*." Gunby, 840 F.2d 1124. (emphasis added).

Normally the remedy of reinstatement is the preferred remedy so as to avoid lost earnings in the future. Ellis v. Ringgold School District, 832 F.2d 27, 30 (3rd Cir. 1997). However, where there has been evidence that demonstrates "…the relationship between the parties has been so damaged by animosity so as to make reinstatement impracticable, Feldman v. Philadelphia Housing Authority, 43 F.3d 823, 835 (3rd Cir. 1994), or where there are no comparable positions available, Id., then the Court may fashion other relief.

In the present case, the evidence presented both in the pretrial briefing and at trial clearly evidences that the level of animosity which would exist if the plaintiff were to be reinstated to her former position as Supervisor of Constituent Call Center, by displacing her successor would force the parties into revisiting

the entire hostile situation all over again.[1] The requested remedy, as described in the following paragraph, would make the plaintiff "whole" and put her on the same pay scale as she would have been if she had stayed in the Constituent Call Center, but not cause any collateral injury to any other City employee.

The plaintiff's requested equitable relief in this matter would be to have her present position designed a "classified/merit position" and to place her in the same pay scale as she would have been had she not vacated the supervisor's position of the Constituent Call Center. This relief would provide Ms. Hemphill the security which she originally sought when she applied for, and was awarded, the supervisor's position, as well as making her whole with regard to financial matters in the future. This would obviate the need for an award of front pay and would minimize impact on any other city employees.

This requested type of creative relief has been both used and agreed to in the past by the City. After a successful appeal and remand for injunctive relief in a class action on behalf of minority fire fighters who had been denied promotions the City "consented" to a similar temporary relief, creating positions which did not exist before the litigation, and which would latter "…continue to exist until the minority firefighters vacated them either by promotion or by retirement. After a position was vacated by its initial occupant, the position would *no longer exist*." (Affidavit of Gary W. Aber, ¶6, Exhibit No. 1) Such agreed to relief by the City

---

[1] Counsel for plaintiff recognizes, that as Mark Twain wrote: "If you would beseech a blessing upon yourself, beware! lest without intent you invoke a curse upon a neighbor at the same time." The War Prayer, by Mark Twain. Obviously, under the present circumstances plaintiff would not seek to bring a "curse" upon her successor by having her removed.

would be very similar to designating Ms. Hemphill's present position a "classified or merit position", only for her tenure in that position. Moreover such a procedure would be akin to the injunctive relief of *"instatement"* previously utilized by this District Court, where there had been improper personnel decision in denying a promotion to a Delaware State police officer, Bullen v. Chaffinch, 336 F.Supp.2d 357, 358-59 (D.Del. 2004), and is viewed as a preferred remedy, Id. at 359.

To the extent the City argues that giving Ms. Hemphill a "classified/merit position" would be contrary to the rights and/or interest of other City employees who might be occupying similar positions, such an argument has been rejected by the United States Supreme Court. In Franks v. Bowman Transportation Co., Inc., 424 U.S. 747, 773-74 the employer objected to an award of retroactive seniority to the successful class plaintiffs arguing that such equitable relief would "…conflict with the economic interests of other Bowman employees." Id. at 773. The Court rejected such an argument stating that the denial of such relief to identifiable victims of discrimination:

> "…on the sole ground that such relief diminishes the expectations of other arguably innocent, employees would if applied generally frustrate the central 'make whole' objective of Title VII…there is nothing in the language of Title VII, or its legislative history to show that Congress intended generally to bar this form of relief to victims of illegal discrimination…. Accordingly, we find untenable the conclusion that this form of relief may be denied merely because the interests of other employees may thereby be affected. 'If relief under Title VII can be denied merely because the majority group of employees, who have not suffered discrimination, will be unhappy about it, there will be little hope of correcting the wrongs to which the act is directed.' United States v. Bethlehem Steel Corp., 446 F.2d 652, 663 (C.A.2 1971).". Franks v. Bowman, 747-75.

The Third Circuit has echoed the Franks holding stating:

5

> "The make whole standard of relief should be the touchstone for the district courts in fashioning both legal and equitable remedies in…discrimination cases. Victims of discrimination are entitled to be restored to the economic position they would have occupied but for the intervening unlawful conduct of employers. <u>Gurmankin v. Costanzo</u>, 626 F.2d 1115, 1121 (3rd Cir. 1980) (directing the District Court to make an award of back pay but declining to order the granting of tenure because the case involved an "initial hiring" and it could not be determined if the plaintiff could have earned tenure by performing satisfactorily, and which would required placing that plaintiff "… in a better position than she otherwise would have been…". <u>Id.</u> at 1125).

Thus, there can be no argument that the mere unhappiness or envy of co-workers should act to bar this appropriate equitable relief.

Alternatively, if the Court does not wish to provide the suggested form of *"instatement"* relief then in lieu of such equitable relief, an award of front pay should be made. As plaintiff testified at trial, her present non-merit position is one in which she serves at the pleasure of the Police Chief. As she also testified since there is going to be a new mayor elected in 2012, a new Police Chief will be appointed and she would lose her present position. Thus, unless she is granted "merit" status, an award of front pay would be necessary. Awards of front pay of as much as ten and thirteen years have been found reasonable. <u>Donlin v. Phillips Lighting North America</u>, 581 F.3d 73, 87 (3rd Cir. 2009); <u>Bianchi v. City of Philadelphia</u>, 80 Fed.Appx. 232, 237-8 (3rd Cir. 2003) (finding that a calculation by the front pay by the jury equivalent to thirteen years until retirement was "not unreasonable").

**B. Equitable Relief Includes Awards of Back Pay**: As this Court has acknowledged *back pay* is a form of equitable relief "…available to a prevailing

6

Title VII plaintiff.", Hare v. Potter, 549 F.Supp.2d 688, 691 (E.D.Pa. 2007), and is designed to make the plaintiff whole. Id. 691-92. .It is available to prevailing plaintiffs in retaliation cases, Candle v. District of Columbia, 2001 WL 4102271 *5 (D.D.C. 2011).

The Complaint in this matter sought relief including, but not limited to, "back pay" (Dk-1, p. 9). The jury's finding of retaliation was in compliance with the Court's Instructions that required them to find she was "…compelled to seek a transfer back to her former position." (Jury Instructions: Dk-71, p. 15).

This Court has previously examined in detail the nature, extent, and right to the equitable remedy of back pay, Hare v. Potter, 549 F.Supp.2d 688 (E.D.Pa. 2007) There this Court denied a back pay award because it found that there had been no constructive discharge. As was discussed during the review and agreement for the jury instructions the constructive discharge theory for a hostile work environment no longer remained in this case given the Court's grant of summary judgment on the issue of discrimination (Dk-61, 62 & 64)..

What remained for trial was the claim by Ms. Hemphill that she was subjected to retaliation because of the stipulated to "protected activity in which she engaged." Unlike Hare v. Potter, the issue of constructive discharge, which would have required a showing of "…working conditions so intolerable that a reasonable person would have felt compelled to resign.", Pennsylvania State Police v. Suders, 542 U.S. 1279, 147 (2004), no longer remained in the case. Rather, as reflected in the agreed to jury instructions the issue for the jury to examine and to determine was one of retaliation, upon which the Court instructed

the jury (Dk-71, p. 14), that Ms. Hemphill was required to "…show that the actions and treatment of her by the City were serious enough that they might well have discouraged a reasonable employee from complaining about racial harassment or discrimination.". (Dk-71, p. 14). The instructions further required:

> "Ms. Hemphill must prove that under the facts as you find them, a reasonable person in her place would have felt compelled to seek a transfer back to her former position." <u>Jury Instructions</u>: (Dk-71, p. 15).

The jury's verdict found that Ms. Hemphill was a victim of retaliation, meaning the jury concluded she was "…compelled to seek a transfer back to her former position." This finding would be the retaliatory equivalent to a constructive discharge in a discrimination case. Thus, in the context of this retaliation claim, Ms. Hemphill has met the threshold requirements for the equitable award in the form of back pay.[2]

  **C. Amount of Back Pay:** It is axiomatic that back pay as an equitable remedy for retaliation and does not require "…mathematical certainty and exactitude…especially as long as the award is based on a reasonable method of calculation." <u>Bates v. Board of Education of Capital School District</u>, 2000 WL 376405 *8 (D.Del. 2000), citing <u>Weiss v. Parker Hannifin Corp.</u>, 747 F.Supp. 1118, 1132 (D.N.J. 1990). This Court has reached a similar conclusion, <u>Hare v. Potter</u>, supra at 695, citing the Supreme Court's decision of <u>Bigelow v. RKO</u>

---

[2] Plaintiff has, in order to fulfill her obligations to mitigate any damages, attempted to apply for merit positions (.e.g. Exhibit No. 5, and application for the position of "Sheriff's Sale Administrator").

8

Radio Pictures, Inc., 327 U.S. 251, 264 (1946) and Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562 (1931).

The affidavit of plaintiff, Lisa A. Hemphill (attached as Exhibit No. 2) provides a factual basis for the proper calculation. Attached to that affidavit, as Exhibit "A", is the pay scale contained in the most recent City of Wilmington budget for a Level I, Administrative Assistant I. As Ms. Hemphill states in her affidavit, her present salary is $44,170. Also attached to Ms. Hemphill's affidavit, as its Exhibit "B", is the pay scale for the City Budget, Fiscal Year June 2011-June 2012, which demonstrates the pay level for her former position as a Supervisor of the Constituent Call Center would have been, and a Grade "L", Step VII in the amount of $49,367. The difference between Ms. Hemphill's present salary of $44,170 and what her pay as a Supervisor of the Constituent Call Center, would have been, at $49,100 would be $4,930. Since Ms. Hemphill was "…compelled to seek a transfer back to her former position" on January 19, 2008 (DX-C) three years and nine months have passed.

The difference between Ms. Hemphill's present pay rate of $44,170 (Hemphill Affidavit, Exhibit "A") and that if she had remained as Supervisor of the Constituent Call Center (Hemphill Affidavit, Ex. "B")$49,100, would be $4,930, or for a three-year period $13,790 (3 X $4,930=$13,790. Each month Ms. Hemphill lost income would have been in the amount of $410.83 ($4,930/12=$410.83), or $3,697.47 for a nine-month period ($410.83 X 9=$3,697.47. This means that the amount of lost wages she lost for the three years and nine months from when she left the supervisor's position until trial (January 16, 2008 until October 31,

9

2011) would have totaled of lost wages, for the lost back pay award in the amount of $17,376.47 ($13,790 + $3,697.47=$17,376.47).[3]

  **D. Interest on Back Pay Award:** There is "…a strong presumption in favor of awarding prejudgment interest except where the award would result in 'unusual inequities'." Booker v. Taylor Milk Co., Inc., 64 F.3rd 868 (3rd Cir. 1995). Prejudgment interest is simply another part of the "make whole" relief intended under Title VII.

> "Prejudgment interests 'serves to compensate a plaintiff for the loss of the use of money that the plaintiff otherwise would have earned'…". Eshelman v. Agere Systems, Inc., 554 F.3rd 426, 442 (3rd Cir. 2009), citing Booker v. Taylor Milk Co., Inc., super, at 868.

  Moreover, the equitable remedy of awarding prejudgment interests is meant "…to avoid a windfall to defendant in paying past wages in current dollars while having enjoyed the use of the capital over the years." Davis v. Rutgers Casualty Ins. Co., 1964 F.Supp.560, 575 (D.N.J. 1997).

  As the Davis Court pointed out, many Courts, as did the Davis Court, award interest based upon the provisions of 26 U.S.C. § 6621 and the Federal Short Term rate, plus three (3) percentage points. Alternatively other courts have used the provisions of 28 U.S.C. § 1961 (the most recent U.S. Treasury Fifty-two-week auction rate [T-Bill rate]). The most recent Fifty-two-week T-bill rate, as of October 20, 2011 was 0.122% (Exhibit No. 3). Under the provisions of 26

---

[3] Despite counsel's effort the parties have not been able to reach an agreement on the amount of back pay. If necessary plaintiff would request a brief hearing on the subject.

U.S.C. § 6621, the Short-Term Rate for November 2011 was 0.19% (Exhibit No. 4), and pursuant to 28 U.S.C. § 6621(a)(B) & (2)(B) would add 3 percentage points to the Short-Term Rate yielding a rate of 3.19%.

Without compounding, and using the 26 U.S.C §6621 rate of .0319, the interest for the lost wages would be **$915.52** ([$4930 X 0319= **$157.27**]+ [$9960 {2 x $4930} X .0319=**$317.72**] + [$13,790 {3 X $4,390} X .0319=**$439.90**][4]

**E. Additional Equitable Relief:** The plaintiff would request the Court to order additional equitable relief in two forms. First, in view of the fact that the jury found the City of Wilmington management retaliated against Ms. Hemphill merely because she complained of a hostile work environment, and in "good faith" engage in a protected activity when she made such complaint, it would seem incumbent upon the City to provide additional training to its management level personnel. As this Court stated in Hare v. Potter, supra:

> "The jury's verdict, however, identified a serious deficiency at some level of defendant's management. Such a finding cannot be ignored. The training proposed would impose nominal-burdens on the defendant's operations of reinforcing the need for defendant's managers to remain vigilant in promoting the lofty goals of Title VII." Hare v. Potter, at 549, 698.

The evidence in this matter indicated that despite the knowledge of the Human Resources Department, and the head of Public Works, that there had been inappropriate actions directed to Hemphill, they refused to take any

---

[4] These calculation not only do not compound the interest, but since the monthly interest is so small, none is claimed for the nine (9) months since Ms. Hemphill suffered a decrease in income.

11

appropriate and sufficient action in support of Hemphill. When questioned at trial the head of public works admitted that while he was directing Ms. Hemphill to return to the Call Center he was refusing to even take fifteen minutes to visit the Call Center to put a stop to the ongoing harassment of Hemphill,. This refusal was despite his own admission that the last attempt, in November 2007, had failed to accomplish an end to the harassment. Rather, he and City management intended Hemphill to return to the potential hostile work environment and only take action to deal with any further hostilities directed towards Ms. Hemphill *after it occurred*.[5] Obviously, such a position is contrary to the law under Title VII which mandates that employers have a duty not only to stop ongoing prohibited hostility, but to take appropriate steps to prevent it from continuing in the future.

> "The obligations under Title VII) actually has two parts. **The first** consist of the temporary steps the employer takes to deal with the situation while it determines whether the complaint is justified. **The second** consists of the **permanent remedial steps** the employer takes once it has completed its investigation [citation omitted]". Swanson v. Potter, 271 F.3d 1184, 1192 (9th Cir. 2001) (emphasis added).

This Circuit has echoed this position and the importance of remedial measures to prevent future unlawful conduct, which management at trial admitted it failed to take, since they are designed to prevent "further harassment". Griffin v. Harrisburg Property Services, Inc., 421 Fed.Appx. 2004, 2009 (3d Cir. 2011), citing Huston v. Procter & Gamble Paper Products, 568 F.3d 100, 110 (3d Cir. 2009).

---

[5] That is: "Close the barn door after the horse was already out".

Appropriate training ordered by this Court would remind City of Wilmington managers of not only the first part of their obligation to stop harassment, but also to train them to recognize and fulfill the second part of their obligations, prevent further future harassment. In this case, every witness who testified on behalf of the City admitted not only that the second step was not taken, but as the former head of the City's Human Recourses Department, Marcia Gonzalez-Gillespie, admitted, such failure was improper. Thus, the need for additional training is clearly evident.

A second form of equitable relief is supported by the affidavit of Ms Hemphill (Exhibit 2, ¶5)  There she describes several sources that have related to her that the City management do not acknowledge the finding of the Jury that the City was guilty of retaliation. Rather, as her Chief has informed her the City is suggesting to other City employees that they 'won" the case. Such actions, if true, further demonstrate the recalcitrance of the City to accept its responsibilities and act effectively to prevent any repetition of the events that gave rise to this unfortunate law suit.

As this Court also noted in <u>Hare v. Potter</u>, supra, it has no power to prevent the City from continuing to misrepresent the outcome of the trial, but, as the Court acknowledged "Equitable relief is appropriate because the jury found the defendant retaliated against one of its (employees) **…"**. <u>Hare v. Potter</u>, 549 F.Supp.2d., at 698. Given similar circumstances as here, the Court directed that in order "To accomplish complete relief, defendant shall publish notice of the verdict in the (workplace)…", <u>Id</u>**..** The plaintiff would request the Court to direct

the City of Wilmington to post the notice that in this litigation, the jury found that the City of Wilmington was guilty of retaliation, and to post such notices in all places where the statutory required notices of "non-discrimination" are similarly posted.

WHEREFORE, the plaintiff requests this Honorable Court to grant Post Trial equitable Relief as follows;

1. Order the defendant to designate Ms Hemphill's present position as Administrative Assistant to the Chief of Police as a Merit or Classified position.

2. Order the defendant to set Ms. Hemphill's rate of pay at a Level "L", Step V, until such time as she voluntarily vacates the position of Administrative Assistant to the Chief of Police.

3. Award Ms. Hemphill back pay in the amount of $17,376.47

4. Award Ms. Hemphill prejudgment interest on the back pay award in the amount of $915.52

5. Order the defendant to implement an appropriate training program for its mangers to prevent future unlawful retaliation.

6. Order the defendant to post notices in the same locations as it posts the required Equal Employment Anti-Discrimination Equal Opportunity employer postings a notice informing City employees that is Court, by a Jury verdict, found the City guilty of retaliation for the filing of a complaint of discrimination.

Respectfully submitted,

   /s/ Gary W. Aber
GARY W. ABER (DSB #754)
702 King Street, Suite 600
Wilmington, DE  19899
Attorney for Plaintiff
(302)472-4900
gaber@gablawde.com

Dated:  November 1, 2011